JOHN S. WISE, *Appellant* v. STATE OF KANSAS, *Appellee.*

In a criminal action for murder, an exception to a ruling of the Court below rejecting evidence offered by defendant of the comparative strength of the deceased and the defendant, becomes unavailable where it is admitted by the prosecution in open Court that the deceased was a much stronger man than the defendant.

*Semble*, the facts in detail of what occurred at the time of the homicide—as the grapple, scuffle, &c., were better evidence of comparative strength, than the opinion of a witness.

The character and habits of the deceased—as that he was well known by defendant and others to be quarrelsome and savage—are inadmissible as evidence, unless at least the circumstances of the case raise a doubt as to whether the defendant acted in self-defense, and the record must show that the defendant was justified in believing himself in danger, *held* that the circumstances detailed, covering the *res gestae*, are sufficient to show the character of deceased so far as it was proper to show it; and from these circumstances must the provocation, under which defendant acted, be judged, in this case.

Where the record shows that the parties were eight or nine paces apart at the time of the fatal shooting—defendant with a loaded double-barrel shot-gun, and deceased with a knife, and that deceased had stopped before defendant shot him, there is hardly sufficient shown to have justified defendant in considering himself in danger.

Where the Court refused to charge "that the defendant is entitled to the benefit of every reasonable doubt upon every material fact involved in the case," but charged that "the defendant is entitled to the benefit of every reasonable doubt of his guilt, remaining in the minds of the jury, after canvassing the whole of the testimony in the case," *held* that the charge given was the law applicable to the case, and that an exception to the refusal of the Court to charge as asked, was not well taken.

An indictment commencing "State of Kansas, Chase County, ss: In the District Court of the 5th Judicial District sitting in Chase County, April Term, A. D. 1863. The jurors of the Grand Jury of the State of Kansas duly drawn, empanneled, charged and sworn to enquire of offenses committed within the body of the County of Chase, and within the county of Marion attached to said County of Chase, for judicial purposes," &c. *held* to sufficiently show that it was found by a grand jury of the County of Chase under Sec. 95 of the Criminal Code.

Felonies are offenses against, prosecuted and punished by, and in the name of the State, by a grand jury, organized in each county, pursuant to State law, to inquire, in its behalf, as to infractions of its laws in each county,

Under *subd.* 5, Sec. 95, Criminal Code, where, in the indictment, a word, necessary in one description of the wounds, is omitted, but where the indictment still contains a certain and explicit description of the wound that caused the death, *held* sufficient, and that the defective description might be treated as surplussage under *subd.* 6, Sec. 96, or disregarded under *subd.* 7, of that section of the Criminal Code.

At the spring term A. D. 1863, of the District Court for Chase County, the plaintiff in error, John S. Wise, was indicted for murder for the killing of Robert Bailie in Marrion County, Kansas, on the 4th of July, A. D. 1862,—Marrion County being attached to Chase County for judicial purposes. At the same term the case was transferred to Lyon County for trial. At the October term, A. D. 1863 of the District Court for Lyon County, Wise was tried and convicted of murder in the second degree on the 3d day of November 1863.

During the trial several exceptions were taken to the ruling of the Court in admitting and refusing to admit testimony, and to the giving and refusing to give different charges to the jury. A motion in arrest of judgment was made and overruled, and one for a new trial likewise overruled, both of which rulings were excepted to.

The particular facts presenting the points decided appear more fully in the opinion of the Court.

*John Martin* argued the case for appellant, and *W. W. Guthrie*, for appellee.

*Elmore and Martin*, for appellant, submitted:

1st. The defendant proposed to prove by Anna Bailie, first, 'the comparative strength of the deceased and the defendant, and secondly the fact that when Bailie was angry and excited, that he was exceedingly dangerous. The Court refused to allow the proof to be made. We think he was clearly wrong. It was important and material to the defendant to show with what purpose and object he acted. He being well acquainted with Bailie and knowing

the fact that he was a very dangerous and desperate man when angry. That it required on his part the extremest precaution to keep from being killed by Bailie. It was proper to show the belief of Wise that he was in danger of great bodily harm, if not death, and connected with the fact that he had already been dangerously wounded by Bailie, and the fact of Bailies' still pursuing him shows that Wise believed he should be killed, and disproves the presumption of malice. It goes to show the character of the homicide, because with a full knowledge of Bailie's desperation and superior strength, it certainly would be a greater justification to Wise than it would have been if Bailie had been a man of inferior or equal strength and an amiable temper and disposition. It proves the fact that he Bailie acted with a felonious intent, and even if it should appear that he did not intend a felony, but that from these facts connected with others already proven that Wise believed so, he was equally justified in shooting Bailie. *Wharton Crim. Law, Sec.* 641, *m. n., Wharton's L. of Homicide, pp.* 227-293; 29 *Ala.,* 17-18; *Com.* v. *Lebart,* 1 *Wharton's Crim. Law,* 565, *note.*

2nd.   If the defendant could not prove the character and strength of Bailie, the Court was certainly wrong in allowing the statement of the Prosecuting Attorney going to the jury as evidence. The simple statement of the District Attorney that Bailie was a man of superior strength to Wise, was calculated to prejudice the rights of the defendant. It goes to the jury with the stamp of judicial disapproval, subject to doubt and uncertainty, and therefore not calculated to have the same effect with the jury as if it had been admitted originally by the Court. And again, the Court erred in allowing the statement of the attorney to go to the jury as evidence. The prosecution cannot under any circumstances directly or indirectly be permitted to offer testimony as to the character of the defendant or the deceased, and the subsequent action of the Court in admitting the statement of the District Attorney, besides being

error, of itself does not affect or cure the original wrong or error.  6 *Ohio State Rep.*, 519.

3d.  The Court erred in refusing to give the second charge, as asked by the defendant.  "He is entitled to every reasonable doubt upon every material fact involved in the case."

4th.  The indictment is bad.  It does not clearly appear from the indictment that it was found by a grand jury of the County of Chase.  There is no such body of men known to the laws of this State as the "Grand Jury or Grand Jurors" of the State of Kansas.  The statement is in substance a direct denial of the proposition that it was by a grand jury of the County of Chase.  *Comp. L. p.* 251, *Sec.* 95, *p.* 607, *Sec.* 2.

The indictment is bad for uncertainty as to the number, location and character of the wounds.  It is not only uncertain but states an impossibility, in charging in the second count that Bailie received "one mortal wound" on the mouth and the left side and the throat, and near the throat.  The word "several" means nothing, even if the word "wounds" was accidentally omitted, does not cure the defect.  It still omits the word "mortal," and the Court cannot take anything in an indictment by intendment.  The omission of the words "mortal wounds" vitiates the whole proceeding, and cannot be cured.

The first count is also defective, it does not definitely locate any of the wounds.  And even if this count is good it will not support the verdict.  The manner of death in the two counts is totally dissimilar.  *Comp. L. p.* 251, *Secs.* 89-95 ; 20 *Missouri R.. p.* 58 ; 8 *Ohio St.* 98-131-306 ; 10 *id. R.*, 439.

The indictment is bad in not charging in either count as it should, that the killing was "feloniously" done.  At common law, an indictment omitting this word in charging the character and manner of the crime, was fatally defective.  Our laws have not changed it, but upon the contrary

provide and declare that it is a felony.    It is a word neces-
sary to a true technical description of the crime.    Murder
therefore is a "felony," and unless the law purposely omits
the use of it, it should always be so charged in an indict-
ment.    *Comp. L.*, 345, *Sec.* 300; 25 *Mo.*, 325; 9 *id.* 730;
*Barclay's Dig.*, (*Mo. R.*) *p.* 217, *Sec.* 62; 3 *Mo.*, 61; 24
*id.* 380; 29 *Ala. R.* 27; 4 *Barton*, (*Ala.*) 397; *Wharton's
Crim. L.*, *Secs.* 399-400; *Whar. L. Hom.* 260-261.

5th.    The verdict of the jury is contrary to the evidence
and to law.    It is not necessary for this Court to determine
the particular grade of the offense, if the Court is satis-
fied that the facts applied to the law will reduce it below
the finding of the jury.    And therefore it is only necessa-
ry to determine whether or not it is murder in the second
degree.

To constitute murder in the second degree the offense
should have been committed purposely *and maliciously*,
and the malice is the gist of the offense.

The evidence in the case applied to the law as decided
in other cases, and by comparison cannot for a moment
leave a doubt as to the offense.    The evidence not only
does not prove, but actually disproves malice.    If then
malice is wanting it cannot be murder in the second degree.
*Comp. L.*,287, *Sec.* 2.

There was a combat between the parties.    There was a
sudden provocation, it was all one and the same transac-
tion.    It was done in the heat of passion.    All these ques-
tions are to be considered in ascertaining the nature of the
crime.    *Whar. L. Hom.*, 179-293-216-219-220-221-223-226-
227; *Whar. Crim. L.*, *Secs.* 932-935-971-987-1020-1026;
*Bish. Cr. L.*, *Secs.* 630-644.

Likewise the belief of defendant as to personal danger
to himself, and it is immaterial whether the belief be real
or imaginary, as shown by authorities already cited.

6th.    We however claim that the trial and conviction is
irregular and void; for the reason that the Court had no

authority to hear and determine the cause.    By law, Court for Lyon County meets on the 26th of October, and on the 2nd day of November in the County of Morris.    The Court for Lyon County commenced on Monday the 26th of October, as provided by law, and was continued until the 3d of November, without any other or further proceeding than the regular order of adjournment and meeting, and the record shows that it was the regular term.    Wise was convicted on the 3d day of November.    We claim that the Court for Lyon County was limited by law to one week, and could hold no longer; that the law provides that on the Monday following, the same Court should be in session in Morris County, and it would be impossible to hold both Courts and comply with the law, and a judge has no authority to adjourn a Court from the day appointed by law to some other day.    The law also provides for the manner of holding adjourned and special terms of Courts.    *Comp. L., p.* 57, *Art.* 3, *Sec.* 5 *of the Constitution*; *Acts of* 1863, *Chap.* 22, *p.* 44; *Comp. L., p.* 459, *Sec.* 8; *Ala, Dig. p.* 176, *Secs.* 49 *and p.* 177, *Sec.* 56.

7th.    The Supreme Court has ample authority to reverse the judgment because the verdict is contrary to the law and the evidence.    *Comp. L., p.* 274, *Secs.* 258-264, *p.* 264, *Sec.* 189, *p.* 174, *Sec.* 307 26 *Mo. Rep.,* 340; 10 *O. St. Rep.,* 599; *Barclay's Dig., (Mo. R.)* 253, *Sec.* 433.

8th.    We think the Supreme Court has full authority to examine into, hear and determine the objections to the proceedings pointed out whether such exceptions were raised in the Court below or not.    *Comp. L.,* 274, *Sec.* 264; 10 *Mo.* 29; *Barclay's Dig., (Mo. R.)* 253, *Sec.* 435.

*W. W. Guthrie,* Att'y General, for *appellee,* submitted :

The requirements of an indictment are fully considered in State *v.* Madden, 1 Kans R., 340.

I.    No error was committed by the Court in refusing to permit the witness to answer the question which is assigned as the first ground of error.

1st.  At best it could be but a mere matter of opinion with the witness as to the comparative strength of the parties, and this is not admissible as evidence.  The proper evidence was the facts occurring at the time of the homicide, the conduct of the parties, etc. leaving the jury to judge if the question was important as to the strength of deceased and defendant.

2d.  But if error was committed by the Court in the first instance in refusing to permit the witness to answer the question, it was cured by the subsequent admission of the counsel for the State that "deceased was a man of much greater personal · strength than defendant," which was the most favorable answer that could have been expected from the witness, had she been permitted to answer the question. 19 *U. S. Dig. Trial, pp.* 659-60.

4th.  It is a matter of discretion with the Court to permit evidence to go to the jury at any time before the final submission.  19 *U. S. Dig., p.* 660, Secs. 34-35-36-27; 18 *id. p* 700, Secs. 41-27-32, 9 *Abbott's Pr. R., p.* 562, Sec. 3; 20 *U. S. Dig., p.* 914, Sec. 45.

5th.  Being a matter of discretion with the Court, it is not reviewable on error.  18 *U. S. Dig., p.* 700, Sec. 36; 10 *Abb. Pr. R., p.* 562, Sec. 19; *U. S. Dig., p.* 381, Sec. 70.

II.  No error was committed in refusing to permit the witness to testify to the character and temper of the deceased.

Evidence of character of deceased in trials on indictment for murder, is not admissible.  *Whart. Cr. L., Sec.* 541, *and note;* 1 *Archbold's Cr. Pr. and Plea., p.* 902.

But evidence of this kind can only be admitted—if at all—where the circumstances of the killing are such as to create a doubt as to whether a crime has been committed which was not the case in this instance.  (*Whart. Cr. L., Sec.* 641; 1 *Arch. Cr. Pr. & Plea., p.* 902.)  And after laying the proper foundation, which was not done in this case.

III.   No error was committed in refusing the first instructions asked by the defendant.

1st.   Under our statute on an indictment for murder in the first degree, a defendant may be found guilty of murder in the first and second degrees, or of any of the degrees of manslaughter. *Code Crim. Pro., p.* 253, *Sec.* 107.

2d.   The defendant might have committed the homicide without malice and still be guilty of one of the degrees of manslaughter. *Stat. of Crimes and Punishments, pp.* 288-89-90.

3d.   The refusal to give the instruction did not injuriously affect the defendant as the jury must have found the homicide to have been committed with malice before they could have found the verdict they did, and the Superior Court will not regard exceptions which do not affect the substantial rights of the parties. *Code Crim. Procedure, Sec.* 276.

IV.   It was not error for the Court to refuse the instructions asked and to give the substitute.

1st.   The instruction given was substantially in the words of the statute, and was all the defendant was entitled to. *Code Crim. Proc., Sec.* 207.

2d.   It was in accordance with the common law authorities. *Whart. Cr. L., Sec.* 707, *Bemis Webster case, p.* 470.

3d.   The instruction given was equivalent to the one asked, when taken in connection with the fact, which appears of record, that the Court instructed the jury as to what were the material facts to be proven in each degree of the offense charged.

4th.   Admitting the instruction asked to be abstractly correct, no injury could have resulted to the defendant, as the instructions given were substantially the same, and the Superior Court will not regard exceptions which do not affect substantial rights. *Code Crim. Proc., Sec.* 276.

V.   There was no error committed in overruling the motion for a new trial on the ground that the verdict was contrary to evidence.

1st. The evidence as set forth in the bill of exceptions is sufficient to sustain the verdict.

· 2d. No exceptions can be taken to the ruling of a Court in refusing to grant a new trial on the ground that the verdict is against evidence. 6 *Ohio State Rep.*, 500, *Civil Code p.* 173, *Sec.* 300.

VI. It was not error for the Court to overrule the motion in arrest.

1st. An indictment purporting to have been found by the "grand jury of the State of Kansas, inquiring of offenses committed within the body of the County of Chase and the County of Marion, attached to the County of Chase for judicial purposes," is sufficient. 3 *Ohio State Rep.*, 362; 7 *id.* 411.

2d. The allegations contained in the indictment imply that the act was committed with malice, and therefore an express allegation was unnecessary.

3d. The allegation that an act was " feloniously" done is not necessary under our statute. *State* v. *Madden*, (1 *K. R.*) 340, 1863, 4 *Ohio State Rep.*, 542.

4th. The indictment is in the words of the statute, and this is always good. 20 *U. S. Dig.*, 521, *Sec.* 53; 9 *id.* 379, *Secs.* 34-35; 16 *id.* 359, *Sec.* 51, *p.* 360, *Secs.* 57-8.

*By the Court,* BAILEY, J.

At the spring term, A. D. 1863, of the District Court for Chase County, the appellant, John S. Wise, was indicted for the murder of Robert Bailie on the 4th day of July, A. D. 1862, in the County of Marion, which is attached to Chase for judicial purposes. At the same term the case was transferred to the County of Lyon for trial.

At the October term, A. D. 1863, of the District Court for the County of Lyon, Wise was tried and convicted of murder in the second degree, and sentenced to ten years confinement to hard labor.

The exceptions taken to the rulings of the Court on the trial will be considered in the same order in which they appear upon the record.

The first exception taken is to the ruling of the Court below that Anna Bailie, the wife of the deceased, who was made a witness for the defense, should not answer the question put to her by defendant's counsel, to-wit: " If you know, state to the jury the comparative strength of the deceased and John S. Wise ?"

How far the mere *opinion* or *belief* of Mrs. Bailie, as to the comparative strength of Wise and her husband would have been evidence for the jury, it is not necessary for us to determine, though we incline strongly to the belief that the facts she had previously stated in detail to the jury, of what occurred at the time of the homicide—the grapple, the struggle upon the ground, Bailie uppermost with the knife in his hand which he had wrenched from Wise—were more legitimate and satisfactory evidence as to which was the stronger, than any answer she would have given in response to the demand of the counsel if the Court had permitted the answer to be given. However this may be, we are unanimously of the opinion that the subsequent admission by the counsel for the State that the deceased was a much stronger man than Wise, as a fact proved, remove all grounds of objection on this point. It admitted, as proved, all that "the most favorable answer which could have been given by the witness would have proved. This last conclusion seems to be well sustained by authority. 7 *Gray*, 92; *Stephens* v. *the People*, 19 *N. Y.*, 549; 1 *Grant's cases*, (*Penn.*) 329.

The second exception was to the ruling of the Court refusing to permit Mrs. Bailie to answer the following question, to-wit: " If you know, state to the jury the character and temper of the deceased, Robert Bailie, when angry and excited, and whether or not he was at such times a dangerous or desperate man ?"

The general rule on this subject is thus stated by Wharton: "On the trial of an indictment for homicide, evidence to prove that the deceased was well known and understood generally by the accused and others to be a quarrelsome and savage man is inadmissible." * * * * "The rule undoubtedly is, the character of the deceased can never be made a matter of controversy, except when involved in the *res gestae*." *Amer. Crim Law, Sec.* 641.

In a late case in Massachusetts the defendant offered to prove that the general character and habits of the deceased were those of a quarrelsome, fighting, vindictive and brutal man of great strength, as a circumstance tending to show the nature of the provocation under which the defendant acted, and that he had reasonable cause to fear great bodily harm." Objection being made, the Court held (Shaw, C. J. and Bigelow and Metcalf, J. J.,) that, "The evidence was inadmissible. If such evidence were admitted on behalf of the prisoner it would be competent for the commonwealth to show that the deceased was of a mild and peaceable character. Such evidence is too remote and uncertain to have any legitimate bearing on the question at issue. The provocation under which the defendant acted must be judged of by the *res gestae.* And the evidence must be confined to the facts and circumstances attending the assault by the deceased upon the defendant." (*Com.* v. *Hilliard,* 2 *Gray,* 294.) So in California in a case of indictment for murder, the Court held the following language:

"The other point made is the exclusion of evidence of the character of the deceased for turbulence, recklessness and violence. The rule is well settled that the reputation of the deceased cannot be given in evidence, unless at the least the circumstances of the case raise a doubt in regard to the question whether the prisoner acted in self-defense. It is no excuse for a murder that the person murdered was a bad man, but it has been held that the reputation of the deceased may sometimes be given in proof to show that

the defendant was justified in believing himself in danger, where the circumstances of the contest are equivocal. But the record must show this state of case. This does not." *The People* v. *Murry*, 10 *Cal.*, 309.

The evidence in the case at bar shows the parties to have been some eight or nine paces apart at the time of the shooting,—Wise with a loaded double-barreled shot-gun in his hand and Bailie with his knife, and that Bailie had stopped before Wise shot him. Under such circumstances, we think Wise could hardly be justified in considering himself in danger, having so much the advantage in point of arms.

However this may be the whole circumstances as they were detailed in proof upon the trial, and as they appear before us in the bill of exceptions, are sufficient, in our judgment, to show the character of the deceased so far as it was necessary or proper to show it on the defense, and as the defendant could not have been prejudiced by the ruling, this Court will not disturb the verdict.

The third exception is to the refusal of the judge who tried the cause, to charge the jury. "That the defendant is entitled to the benefit of every reasonable doubt upon every material fact involved in the case." Which charge the Court refused to give as asked for, but charged the jury as follows: "That the defendant is entitled to the benefit of every reasonable doubt of his guilt remaining in the minds of the jury after canvassing the whole of the testimony in the case."

We think the law on this point is correctly stated by the Court, and that the exception was not well taken.

The fourth objection is that the indictment is bad: "1st. because it does not appear from it that it was found by a grand jury of the County of Chase."

The language of the indictment itself, is as follows:

"*State of Kansas, Chase County, ss :*

"In the District Court of the Fifth Judicial District, sitting in Chase County, April Term, A. D. 1863.

" The jurors of the grand jury of the State of Kansas duly drawn, empanneled, charged and sworn to inquire of offenses committed within the body of the County of Chase, and within the County of Marion, attached to said County of Chase for judicial purposes," &c.

" Section 95 of the Code of Criminal Procedure, provides that, " The indictment is sufficient if it can be understood therefrom, first, that the indictment was found by the grand jury of the county in which the Court is held."

We think the indictment in this case fully answers this requirement of the statute. Felonies are offenses against the peace and dignity of the State, and are prosecuted and punished by the State. The prosecution is instituted in its name by a grand jury organized in each county in pursuance of the laws of the State, to inquire in its behalf as to infractions of its laws in such county.

2d. "The indictment is bad for uncertainty as to the number, location and character of the wounds, and because it states an impossibility in charging in the second count, that Bailie received 'one mortal wound' on the mouth and the left side, and upon the throat and near the heart."

Upon examination of the indictment it is very apparent that there has been an omission of the word "wounds," and that the omission being supplied that part of the indictment excepted to would read as follows:

" Which said shot so discharged by force of the said gunpowder, did him the said Robert Bailie, strike and penetrate, giving to him the said Robert Bailie then and there with the shot aforesaid, several (wounds) in and upon the mouth and the left side, and upon the throat and near the heart of him the said Robert Bailie one mortal wound, of which said mortal wound the said Robert Bailie did die." Had such been the reading it is evident that no exception could have been taken, and if we treat as surplussage the words "several —— in and upon the mouth and the left side, and," there still remains a distinct charge of giving

to him the said Robert Bailie then and there with the shot aforesaid, * * * upon the throat and near the heart of him the said Robert Bailie one mortal wound, of which mortal wound the said Robert Bailie did die."

This is certain and explicit, and the words proposed to be omitted do not vitiate nor impair their force.

Section 95 Code of Criminal Procedure provides that the indictment is sufficient if it can be understood therefrom. * * * "Fifth. That the offense charged is stated with such a degree of certainty, that the Court may pronounce judgment upon conviction according to the right of the case;" and Sec. 96 of the same act, that "no indictment may be quashed or set aside. * * * Sixth. For any surplussage or repugnant allegation when there is sufficient matter alleged to indicate the crime and person charged. Nor, Seventh. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

In view of these statute provisions we must hold the indictment good beyond question.

Judgment affirmed.

CROZIER, C. J., and KINGMAN, J., concurring.