James CAGLE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17204.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1973.

Rehearing Denied March 8, 1973.

Hubert Hargrave, Wewoka, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., and Frank Muret, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, James Cagle, hereinafter referred to as defendant was charged in the District Court of Seminole County, Oklahoma, with the offense of Grand Larceny, and was later tried, found guilty and convicted by a jury. His punishment was fixed at a term of two (2) years in the state penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

During the trial, Mrs. Betty Shirey testifying on behalf of the State, stated that on September 21, 1970, she was watching television in her home in Seminole, Oklahoma. At approximately 9:00 P.M., she heard a loud noise in the street outside her home. Rushing outside, she observed a truck particularly identifiable by homemade sideboards and a sun visor. The source of the noise was a long cable which extended from the rear of the truck and was lying in the street and stretched around the corner of an intersection close to the Shirey home. Mrs. Shirey further testified that while in the company of other neighbors and while under a street lamp, the defendant approached her and stated he had "lost a cable off his truck and was trying to get it wound up". He subsequently left in the truck. Mrs. Shirey later identified a truck at a residence in Seminole as the same truck she had seen pulling the cable. Mrs. Shirey was able to make a courtroom identification of the defendant.

Two other neighbors testified that they heard the same peculiar noise at approximately the same time and came out of their homes to investigate. Both stated that a truck was pulling a cable behind it, and that the cable was the source of the noise. One witness could specifically identify the truck by color, the wooden sideboards, a broken taillight and a worn paint job, and subsequently identified the truck parked at a local Seminole residence. Neither witness could identify the defendant as the driver.

A Seminole Police Officer then testified that he and his wife were in the vicinity at approximately the same time and saw an abandoned cable stretched across the highway. He proceeded home and came back later to remove the cable from the highway with the use of his own personal truck. The next day the cable was returned to the alleged owner by the officer. The officer was experienced in the sale of oil field equipment and testified that upon return of the cable to the owner, the officer observed that it matched a section of cable on an oil rig. The characteristics of the cable, particularly the unique splice, made the abandoned cable identifiable with that severed portion of the cable from the rig.

A State Highway Patrol Trooper then testified that between 8:00 P.M. and 9:00 P.M. on the same date, he stopped an older pickup truck approximately two miles from the incident. He issued the defendant, the driver of the truck, a courtesy warning for improper equipment since he was driving without lights. The patrolman noticed that the defendant immediately parked the vehicle in a driveway near where he was stopped. The patrolman then received a broadcast that a cable had been abandoned across a highway. Upon his arrival, the truck pulling and abandoning the cable was described to him by a witness. The witness accompanied the patrolman to the parked truck and positively identified said truck as the one pulling the cable.

The production superintendent of the Stillwater Oil Company testified that on the morning after the incident, he discovered that some cable had been severed from an oil rig and taken from the drilling site. Instruments at the site indicated the pump had been shut off at approximately 8:00 P.M. on September 21. The superintendent testified that the cable was probably taken at that time. He identified the cable found on the highway to be the same cable removed from the lease and further testified the cable to have a value in excess of $20.00.

It should be pointed out that Mrs. Shirey was the only witness to positively identify the defendant and connect him with the cable. The State had no witness to the defendant's taking the cable from the drilling site. The defendant's testimony consisted of an alibi wherein he stated that he was returning to Seminole from a trip to Wolf, Oklahoma, when he struck a large bump which caused the lights on his truck to short out. When he arrived in Seminole, he was given the citation by the highway patrolman. When stopped, the defendant was close to the residence of a friend, and he drove into the friend's driveway to make the necessary repairs. Upon cross-examination of defendant, it was learned that he had been previously convicted for the offenses of Grand Larceny and Receiving Stolen Property. Additional witnesses for the defendant generally corroborated his alibi.

The State presented rebuttal testimony of a Seminole Police Officer who stated that the defendant was wearing muddy and greasy clothing when he was arrested.

Although defendant raises four (4) propositions of error, his brief directs his argument towards the entire proposition that the State failed to prove beyond a reasonable doubt that defendant committed the crime of Grand Larceny.

Defendant contends that the witnesses for the State contradicted themselves, since Betty Shirey was the only witness which testified that she talked to the defendant at the scene of the crime when he got out of the truck and walked back to where she was standing. The other witnesses for the State testified that they did not see the defendant get out of the truck. Defendant cites Taylor v. State, 36 Okl.Cr. 419, 255 P. 158, which holds that "a verdict based upon a possibility and supposition of guilt is not justified"; and argues that the contradictory testimony of the State's witnesses presented insufficient evidence upon which to base a conviction. Defendant cites no other relevant authority nor makes further argument.

The State contends that although the element of the crime of Grand Larceny, Title 21 O.S.1971, § 1701, concerning the taking of personal property, was in fact established by circumstantial evidence, there was sufficient proof to warrant the jury's verdict.

The elements of the crime of Grand Larceny are as follows: (a) the taking of personal property; (b) the value of the property exceeds $20.00; (c) the property is taken without the owner's consent; and (d) the property is taken with the intent to permanently deprive the rightful owner of his possession thereof. Any or all of said elements may be established by circumstantial evidence. Coppler v. State, 52 Okl.Cr. 275, 4 P.2d 700 (1931).

The taking of the personal property without the owner's consent and the value thereof were established by direct testimony. The statement of the defendant to the witness, Betty Shirey, that "he lost a cable off his truck and was trying to get it wound up" is sufficient to withstand a demurrer to the evidence and to warrant the jury's finding that the defendant intended to deprive the true owner of his rightful possession of the property.

The taking of property in a larceny case is usually of necessity established by circumstantial evidence. The State contends that the taking was sufficiently established and with this contention we agree. The cable was taken from the oil lease at approximately 8:00 P.M. on the night of the 21st day of September. At approximately 9:00 P.M., the cable was seen unreeling from the bed of the defendant's truck. The truck was positively identified, and the defendant was placed in the driver's seat during this approximate time by the testimony of two witnesses. We believe that these facts are sufficient for the jury to find that defendant took the cable. The case of Bennett v. State, Okl.Cr., 324 P.2d 873 (1958), holds that:

"This court has held in numerous cases that the possession of stolen property re-

cently after the larceny thereof, when unexplained, may be sufficient to warrant the jury in inferring the guilt of the party in whose possession it is found and whether such inference should be drawn is a fact exclusively for the jury. See Weber v. State, 29 Okl.Cr. 55, 232 P. 446; also, Ballard v. State, 68 Okl.Cr. 39, 95 P.2d 239. We are of the opinion the trial court did not err in overruling the demurrer to the evidence."

The State argues, and the Court agrees, that the short period of tine between the taking of the cable and the identification of defendant with said cable does not allow sufficient time to permit a reasonable inference that defendant acquired the cable from someone other than the rightful owner. The greasy and muddy condition of defendant's clothing upon his arrest is an additional circumstance which connects defendant with the cable and the taking thereof. The State further argues that the alibi presented by defendant only rebuts the identification of defendant with the commission of the crime. The alibi does not provide an explanation of the source of the cable which the jury found to be in the possession of defendant. Therefore, assuming the jury did not believe the defendant and his alibi witnesses, the circumstances are consistent with each other and are inconsistent with a reasonable hypothesis of innocence. Again, the Court agrees. The overall consistency of the facts meet the required burden of proof.

■ The conflict in the testimony between Betty Shirey and the other State's witnesses does not infer the defendant's innocence, but only reflects discrepancies in each witness's perception of the events which occurred. This Court has held in the case of Stumblingbear v. State, Okl. Cr., 364 P.2d 1115 (1961), second syllabus, that:

"Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence."

The Court therefore holds that the defendant's proposition that the evidence presented was insufficient to warrant a conviction, is without merit.

The defendant further urges in a second proposition that the trial court erred in not admitting into evidence a warrant subsequently issued for a search of defendant's premises for other items belonging to the owner of said cable. Defendant submitted no authority nor argument to support his contention. This Court has often held that it will not search the books for authority in support of the defendant's arguments. The search warrant was irrelevant, no fundamental error occurred, and the Court finds defendant's contention without merit.

In conclusion, the Court finds that the defendant was given a fair trial, free of fundamental error; that defendant's propositions of error as combined and set out above are without merit; and that the judgment and sentence should be accordingly affirmed.

BUSSEY and BRETT, JJ., concur.